*12M-5032-JGD*

### AFFIDAVIT OF SPECIAL AGENT ROBERT J. BOSKEN,
### U.S. DEPARTMENT OF VETERANS AFFAIRS,
### OFFICE OF INSPECTOR GENERAL,
### IN SUPPORT OF A COMPLAINT

I, Robert J. Bosken, being duly sworn, depose and state as
follows:

I.    **INTRODUCTION**

1.    I am a Special Agent with the U.S. Department of
Veterans Affairs (hereinafter "VA"), Office of Inspector
General (hereinafter "OIG"), and have been so employed
since 2010.  Prior to joining the VA OIG, I was employed as
a Special Agent with the U.S. Postal Service, Office of
Inspector General for approximately six years.  During my
law enforcement career, I have received extensive law
enforcement training, including training on investigations
of the distribution of controlled substances.  My training
has included completing the Federal Law Enforcement
Training Center's Criminal Investigator Training Program,
the U.S. Drug Enforcement Administration's Basic Narcotics
School, and the New England State Police Information
Network's Pharmaceutical Diversion Training.

2.    In addition to my training, I have had experience in
the investigation of the illegal distribution of controlled
substances.  I have participated in numerous drug
investigations as a case agent and in a subsidiary role.

In the course of my involvement in drug related cases, I
have become familiar with the appearance, packaging, and
distribution methods and techniques used to illegally
distribute numerous controlled substances.  I have
debriefed defendants, informants, and witnesses who had
personal knowledge about drug activities.

3.    This affidavit is submitted in support of a criminal
complaint charging **Allen NICKERSON, DOB 3/22/1960,** of **173
Humbolt Avenue, Dorchester, Massachusetts,** with
distributing and dispensing buprenorphine, a schedule III
controlled substance, in violation of Title 21, United
States Code, Section 841(a)(1).

4.    This affidavit is based on my own personal involvement
in this investigation, my training and experience, and my
discussions with other law enforcement officers involved in
this investigation.  In submitting this affidavit, I have
not included each and every fact known to me concerning
this investigation.  Rather, I have set forth only the
facts that I believe are necessary to establish probable
cause to charge Allen NICKERSON with the offense of
distributing and dispensing buprenorphine, a schedule III
controlled substance, in violation of Title 21, United
States Code, Section 841(a)(1).

## II. INVESTIGATION

5.  In July 2011, agents from the VA OIG, working in conjunction with agents from the Drug Enforcement Administration (hereinafter "DEA") and the VA Police Service, began investigating the illegal distribution of controlled substances at the Veterans Affairs Medical Center in Bedford, Massachusetts (hereinafter "VAMC"). The VAMC provides multiple services to veterans of the U.S. Armed Forces, including alcohol and drug abuse/addiction rehabilitation services.

6.  In September 2011, a VA OIG cooperating witness (hereinafter "CW") identified Allen NICKERSON (hereinafter "NICKERSON") as a source of supply for buprenorphine and gabapentin at the VAMC.[1] According to CW, NICKERSON was a veteran who was enrolled as a patient at the VAMC.[2] CW supplied NICKERSON'S cellular telephone number as 857-417-3743.

---

[1] Buprenorphine is a schedule III controlled substance and is commonly sold with the retail names of Suboxone, Subutex, or Buprenex. It is intended for the treatment of opioid addiction, but it too can be abused. Gabapentin is not a controlled substance and is commonly sold with the retail names Horizant, Neurontin, and Gabarone. It is intended for the treatment of seizures and some types of pain.
[2] According to VAMC records, NICKERSON was enrolled as a patient at the VAMC and was obtaining Gabapentin through the VAMC. VAMC records do not report NICKERSON obtaining buprenorphine from the VAMC.

January 13, 2012 UC Purchase of 70 Buprenorphine Pills from NICKERSON for $630[3]

7.    On January 12, 2012, in a series of recorded cellular telephone calls between CW and VA OIG Special Agent Brendan Callanan (hereinafter "SA Callanan"), who was acting in an undercover capacity and posing as CW's associate, NICKERSON agreed to sell SA Callanan seventy buprenorphine pills for $630 U.S. Currency on January 13, 2012.[4]

8.    On January 13, 2012, while under the observation of law enforcement agents, SA Callanan met with NICKERSON at the VAMC.  During the meeting, SA Callanan gave NICKERSON $630 U.S. Currency, and NICKERSON gave SA Callanan an orange colored bottle containing unknown items.  Later, when agents opened the orange colored bottle NICKERSON had sold to SA Callanan, they discovered seventy peach colored six-sided pills with "N8" inscribed on one side.[5]

9.    Agents reviewed the audio recording of the January 13, 2012 meeting between SA Callanan and NICKERSON.  During the meeting, NICKERSON can be heard saying, "She said she's

---

[3] Unless otherwise noted, all text messages were photographed and all calls were recorded.  All meetings were observed by agents and recorded via audio.  In addition to audio recordings, some meetings were partially recorded with video and photographs.  Government funds were used to purchase the drugs, with the serial numbers being recorded.
[4] Only SA Callanan's cellular telephone calls with NICKERSON were recorded.
[5] In addition to relying on the agents' training and experience, agents used a 2007 Drug Identification Bible to identify the peach colored pills as Suboxone.

probably going to, it's going to be another two weeks before she gets something else" and "as soon as I get 'em, I'll give you a call."[6]  Later during the meeting, NICKERSON can be heard saying, "I'll give you, I'll give you a jingle once she gets some more, I'll give you a call."  The peach colored pills purchased that day were sent to a DEA laboratory and are pending analysis.

Additional CW and UC Purchases of Buprenorphine Pills from NICKERSON

10.  On two prior occasions, CW and SA Callanan purchased buprenorphine pills from NICKERSON under similar circumstances.  Specifically, on September 30, 2011, CW and SA Callanan purchased ten buprenorphine pills and one hundred twenty gabapentin pills from NICKERSON for $190 U.S. Currency.  DEA laboratory analysis confirmed that the ten supposed buprenorphine pills NICKERSON sold to CW and SA Callanan on that day did in fact contain buprenorphine. Agents identified the one hundred twenty supposed gabapentin pills NICKERSON sold to CW and SA Callanan that day as, in fact, gabapentin based on their training and experience, and by using the pill identifier feature on www.drugs.com.

---

[6] In previous conversations between NICKERSON and SA Callanan, NICKERSON has referred to a female as the source of the buprenorphine.

5

11.   Similarly, on January 5, 2012, CW and SA Callanan purchased one hundred buprenorphine pills from NICKERSON at the VAMC for $850 U.S. Currency.[7]  Agents identified the pills NICKERSON sold to CW and SA Callanan that day as buprenorphine based on their training and experience, and by using the pill identifier feature on www.drugs.com.

## III.  PROBABLE CAUSE

12.   Based on the foregoing, and based on my training and experience, I submit that there is probable cause to believe that, on or about September 30, 2011; January 5, 2012; and January 13, 2012, **Allen NICKERSON** committed violations of federal law, including distributing buprenorphine, a schedule III controlled substance, in violation of Title 21, United States Code 841 (a) (1).

Robert J. Bosken
Special Agent
VA Office of Inspector General

Sworn and subscribed to before
me this 31st day Of January, 2012.

JUDITH G. DEIN
United States District Magistrate Judge
District of Massachusetts

---

[7] On both September 30, 2011 and January 5, 2012, only SA Callanan was provided with a recording device, and therefore only his portions of the meetings were recorded.

6